Overseers of the Poor of the Town of CLAVERACK *against* The Overseers of the Poor of the City of HUDSON.

IN ERROR on *certiorari* to the court of general sessions of the peace of *Columbia* county.

Two justices of the peace for the city of *Hudson* made an order for the removal of *Sarah*, a negro woman slave, from the city of *Hudson* to the town of *Claverack*, from which order the overseers of the poor of *Claverack* appealed to the court of sessions of *Columbia* county, which affirmed the order. It appeared from the return of the court below, that the slave in question formerly belonged to *Peter Van Rensselaer*, of *Claverack*, in *Columbia* county, who, on or about the 20th *December*, 1814, executed a bill of sale of the slave to *Asel Woodworth*, of the town of *Claverack*, a very poor man, and wholly unable to maintain her, and at the same time paid him forty dollars to take her off his hands, the slave being infirm, subject to fits, and incapable of performing labour. At the time of executing the bill of sale, *Van Rensselaer* disclosed to *Woodworth* her true situation, and all her infirmities were fully set forth in the bill of sale. Soon after *Woodworth* sold the slave to *David C. M'Kinstry* for ten dollars, and endorsed a transfer of all his right upon the bill of sale. *M'Kinstry*, a few days after, sold her to *Isaac Hatch*, in payment of a debt due from him to *Hatch*, who soon after sold her to *Theodore Curtis*, who sold her to a man by the name of *Jacobs*, who lived out of this state. *Hatch* and *Curtis* were freeholders in *Hillsdale*, in *Columbia* county, and they, as well as *Van Rensselaer* and *M'Kinstry*, were of sufficient ability to mantain the slave. The return also stated, that the slave was brought from *Hillsdale*, and left in the street in the town of *Claverack*, from whence she

A. the owner of an infirm slave, executed a bill of sale of the slave to B. a person who was unable to maintain her, at the same time paying him 40 dols. to take her off his hands. B. then sold the slave, and after several sales she finally came into the hands of C. who lived out of the state. The sales were all fair and *bona fide*. A. resided in *Claverack*, and after the sale to C. the slave was left in the town of *Claverack*, and wandered into the city of *Hudson*, from whence she was removed by an order of two justices to the town of *Claverack*. Held, that the sale from A. to B. might be deemed collusive and void within the 14th section of the *act concerning slaves and servants*, (2 *N. R. L.* 206,) at the election of the justices, who might consider either A. as the master

of the slave, or C. although he lived out of the state, there being no evidence that he had exported, or attempted to export the slave; and, therefore, the order was proper on both grounds; on the first, because *Claverack* was the place of settlement of A.; and on the other, because if C. was the master, as he had no place of settlement within the state, and the slave had wandered from town to town, the justices were authorized by the 33d section of the *act for the relief and settlement of the poor*, (1 *N. R. L.* 292.) to remove the slave to the place from whence she last came.

wandered into the city of *Hudson.* The court below de-cided that the sale from *Van Rensselaer* to *Woodworth* was void, and affirmed the order of removal.

*James Strong*, for the plaintiffs in error. He cited acts sess. 36. ch. 78. s. 7. s. 33. 1 *N. R. L.* 279. 292. sess. 36. ch. 88. s. 14. 2 *N. R. L.* 201. *Conàklin* v. *Havens*, 12 *Johns. Rep.* 314. *Jackson* v. *Walsh*, 14 *Johns. Rep.* 415.

*Parker*, contra.

PLATT, J. By the 14th section of the " act concern-ing slaves and servants," (2 *N. R. L.* 206.) it is enacted, " that if any person shall by fraud or collusion, sell, or pre-tend to sell, or dispose of any aged or infirm slave, to any person who is unable to maintain such slave, such sale or disposition shall be void," &c.

By the 24th section of the same act, it is provided, " that if any person shall export, or attempt to export any slave, to any place without this state, such person shall forfeit 250 dollars, and the slave shall be free."

And by the 33d section of the " act for the relief and set-tlement of the poor," (1 *N. R. L.* 292.) it is enacted, " that it shall be lawful to remove any slave who shall have left his master, or shall have wandered from town to town, to the place of settlement of his master, &c. if such place of settlement can be found in this state ; and, if none such can be found, then to the place from whence such slave shall have last come," &c.

I incline to the opinion that the facts present a case within the purview of the 14th section of the act ; and that the sale from *Van Rensselaer* to *Woodworth*, as it regards the town, must be deemed *collusive* and *void.* If so, the justices who made the order of removal had a right to elect, to consider either *Van Rensselaer*, or *Jacobs*, as the master of this slave : for, as applicable to such a case, the term " *void*," must be construed to mean " *voidable*," at the election of the jus-tices who make the order. The purchasers under *Van Rensselaer*, who have successively speculated upon this slave, shall not be permitted for their own private benefit to

allege the illegality of the first transfer. They each, in succession, had a complete title, as against *Van Rensselaer*, and having had the benefit of their contracts, they must assume the correspondent risks.

If *Van Rensselaer* may not be regarded as the present master of the slave, on the ground that his transfer was collusive and void, then I think *Jacobs* is to be considered as the owner. For although the return states, that at the time of his purchase, *Jacobs* " *lived out of this state*," yet there is no evidence that he has " *exported, or attempted to export, her out of the state.*" The forfeiture and the penalty accrue, not merely for buying a slave here, by a person living out of the state, but for carrying, or attempting to carry, such slave out of the state. The purchaser in such case, acquires a qualified right; that is, he may either remove to this state, and keep the slave, or he may sell her to an inhabitant of this state.

Allowing, then, that the sale by *Van Rensselaer* was *not collusive,* and that *Jacobs* is to be regarded as the true owner; then, I think, the order of removal may be sustained; for the return states, that " the said *Sarah* wandered from the town of *Claverack,* into the city of *Hudson;*" which presents a case expressly provided for in the 33d section, which has been cited; to wit, that where a slave has wandered from town to town, and whose master's place of settlement cannot be found in this state, it shall be lawful to move such slave to the place from whence such slave shall have last come, &c.

On either ground, therefore, I am of opinion, that the order of the sessions was correct, and ought to be *affirmed.*

SPENCER, J. and YATES, J. were of the same opinion.

THOMPSON, Ch. J. and VAN NESS, J. dissented.

Order of sessions affirmed.